IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| THOMAS DENN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13-cv-1015-DGK |
| | ) | |
| CSL PLASMA INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

This case involves an employment dispute. Plaintiff Thomas Denn ("Denn") alleges that Defendant CSL Plasma Incorporated ("CSL") discriminated and retaliated against him based upon his sex and his complaints of sex discrimination. Denn filed a two-count lawsuit in the Circuit Court of Jackson County, Missouri, alleging that CSL's actions violated the anti-discrimination and anti-retaliation provisions of the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. §§ 213.055, 213.070. CSL removed to this Court.

Now before the Court are Denn's and CSL's cross-motions for summary judgment (Docs. 36, 41). Addressing CSL's motion first and finding no genuine dispute of material fact and that CSL is entitled to judgment as a matter of law, the Court GRANTS it summary judgment.

**Statement of Facts**

The following facts are uncontroverted unless otherwise noted.[1] CSL, a Boca Raton, Florida-based company, operates a number of blood plasma collection facilities around the

---

[1] The Court obtained the facts from each party's motion. The Court excluded asserted facts that are immaterial to the resolution of the pending motion, asserted facts that are not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact. For certain facts, the Court notes specifically why it

country, including one in Kansas City, Missouri. Denn, a male, began working for CSL as a manager trainee at another facility on September 22, 2009. Sometime before the relevant incidents depicted below, Denn relocated to the Kansas City facility, where he worked as an assistant center manager until November 8, 2012.

During the early part of his tenure with CSL, Denn received several positive reviews. According to records spanning from July 2009 until June 2011, Denn received "good" and "strong" marks for his work as a manager trainee and assistant center manager. At some point during this time span, CSL sent Denn to other centers to assist with process improvement. Around September 2011, Denn received another "strong" rating from his then-supervisor Shane Kennedy ("Kennedy"), a male employee, and he also received an annual pay increase.

On November 28, 2011, Kennedy issued Denn a verbal warning for allegedly revealing confidential information. On December 1, 2011, Kennedy issued Denn a written warning for allegedly engaging in the same conduct despite being told not to do so. Denn vigorously disputes the bases for these reprimands, but does not deny that he was so disciplined.

In January 2012, Rebecca Heatherman ("Heatherman"), who currently works for CSL as a senior manager in Boca Raton, was promoted to center manager of the Kansas City facility. In this position, Heatherman supervised the two assistant center managers, Denn and Cristina Ceniceros ("Ceniceros"). As assistant center managers, Denn and Ceniceros shared many of the same duties and split the workload fairly evenly. From the time that Heatherman ascended to center manager until Denn's termination in November 2012, Denn received numerous verbal and

---

excluded them. The Court's decision not to discuss the bases for other exclusions should not be read as an indication that it overlooked any facts properly set forth in the parties' briefs.

written warnings for alleged performance deficiencies, while Ceniceros received no such discipline.[2]

Denn received his first discipline from Heatherman on February 13, 2012. This written warning, in relevant part, stated:

> The Written Warning provide[s] numerous 'areas of required improvement' including: In November [Denn] received coaching from S Kennedy regarding [Denn's] presence in the production areas, at that time you were advised to spend at least 50% of your time in production – building relationships, interacting with staff, managing or monitoring work flow. I have not consistently seen this effort in the last 4 weeks. Time has been spent on the donor floor but not consistently driving or managing flow or building relationships….Timely delivery of corrective actions not consistent with expectations (at next available shift) in the following examples, M Jones performance prepared 12/19/11 delivered 1/2/12 and J Reese attendance prepared 1/16/12 delivered 1/24/12. On 12/28/11, I provided you with information (from the AMQ position) regarding the need for C Tucker to receive a performance corrective action for setpoints, the corrective action was not prepared.

(Doc. 42-12 at 2-4). This written warning also required Denn to create a development plan aimed at improving his performance and stated that a failure to improve could result in additional corrective actions. He submitted the development plan on March 5, 2012.

From that date through August 2012, Heatherman had numerous conversations with Denn regarding his performance, including missing deadlines, interacting poorly with others, not elevating concerns, and not administering corrective actions. On one occasion during this time frame, Denn explained that he was encountering difficulties with time management and delegating tasks. Heatherman reminded him that during meetings he should inform her about

---

[2] Denn states several facts regarding Ceniceros' "production" numbers and the number of procedures that she oversaw. *See* (Doc. 42 at 14). As CSL notes, however, Denn supports these facts by citing the allegations in the petition, which is insufficient support at the summary judgment stage. *See Skare v. Extendicare Health Servs., Inc.*, 515 F.3d 836, 840 (8th Cir. 2008) (noting non-movant must rely upon more than allegations in the complaint to raise a genuine dispute of material fact). Thus, the Court excludes these facts for lack of support. Denn also cites deposition testimony from Ceniceros showing that she was never disciplined for insufficient "production" or for not completing maintenance work. But the Court finds this immaterial because Denn fails to show that *he* was disciplined for similar failures. The Court thus excludes these facts.

3

resources he needs and specific tasks he would like reassigned. According to Denn, this inability to complete tasks arose solely from being overburdened with duties not imposed on other employees.

On June 5, 2012, Heatherman and Denn reviewed his progress towards his development plan goals. During this meeting, Heatherman highlighted assigned tasks that Denn failed to complete, but they both agreed that he had shown significant improvement since his initial development plan. Shortly thereafter, Denn submitted a second development plan. The plan included several goals for improvement, including: "sharing more detail about current issues and concerns. (Sending out daily/weekly updates.);" "utilizing staff to complete time sensitive tasks, and hold them accountable;" "learn to create more concrete deadlines and hold those involved more accountable;" "eliminate procrastination;" and "create consistent timeliness." (Doc. 42-17 at 3-4). The plan concluded with the statement, "[W]e have agreed that we have seen significant improvement from the first plan…." (*Id*).

On July 19, 2012, Heatherman sent an email to CSL Human Resources ("H.R.") manager Jan Cameron ("Cameron") seeking approval to proceed with a final written warning[3] against Denn. Also copied on the email was Brannon Brittain ("Brittain"), a male H.R. employee. The email stated recent events that supported the final written warning. (Doc. 42-18 at 2). After some modifications, Cameron and Brittain approved the final written warning between the end of July and the middle of August.

On August 17, 2012, Denn complained to H.R. about Heatherman, alleging, among other things, that she discriminated against him because of his sex. CSL H.R. employee Tricia Jackson ("Jackson") discussed the complaint with Denn on August 20, 2012. After an

---

[3] Although never directly defined by the parties, a final written warning appears to be the final opportunity for an employee to correct noted deficiencies before being subject to termination.

4

investigation, which included interviewing multiple employees and reviewing numerous documents, H.R. determined that Denn suffered no discrimination or unfair treatment.

On August 21, 2012, Heatherman presented Denn with his final written warning and development plan. This document noted numerous performance deficiencies and ordered Denn to work on: "Informing peer [Assistant Center Managers], supervisors[,] and [Center Manager] of necessary updates….Provid[ing] a daily or weekend updates sharing pertinent information to the manager on the upcoming shift (include any anticipated challenges or follow up items)." (Doc. 42-20 at 2-5).[4]

Denn took a leave of absence from September 15, 2012 until October 14, 2012. On October 26, 2012, after his return, Denn acknowledged receipt of an addendum to the final written warning and development plan. This addendum contained a revised timeline and again outlined areas in need of improvement, including:

> Informing peer [Assistant Center Managers], supervisors[,] and [Center Manager] of necessary updates (Human Resources or other Sr Management if applicable). As a member of management you are held to a higher standard and should lead by example to promote a positive and professional working environment….Following the proper channels of communication as outlined in the employee handbook (Conduct Counseling Handbook Pg 22)….Provide daily or weekend updates sharing pertinent information to the manager on the upcoming shift (include any anticipated challenges or follow up items).

(Doc. 42-21 at 2-4). This addendum also identified additional performance issues, including that Denn failed to timely elevate an employee's resignation letter. (*Id.* at 2).

---

[4] In his statement of facts, Denn claims that after receiving the final written warning, he made a "retaliation" complaint to H.R., and that Heatherman knew about this complaint on or before August 24, 2012. CSL challenges this statement by arguing the cited deposition testimony does not support Denn's statement. Denn never responded to this argument. After carefully reviewing the deposition testimony, the Court sustains CSL's objection. The testimony cited by Denn suggests, at most, that Heatherman was made aware of Denn's *discrimination* complaint prior to August 24, 2012; it does not demonstrate that Denn made a "retaliation" complaint or that Heatherman knew of any such complaint. *See* (Doc. 37-2 at 15-18). Because Denn failed to support this factual statement initially or later direct the Court to other record evidence doing the same, the Court excludes these proposed facts.

5

On October 31, 2012, an incident occurred between two employees who were under Denn's supervision. Christian Desouza ("Desouza") allegedly grabbed and pulled Kristina Todd ("Todd") in an aggressive manner. Todd immediately told Denn about the incident, but they did not discuss it at length because she had to leave. Denn did not talk to Todd or Desouza again until November 7, 2012. According to Denn, he investigated the incident prior to this date by looking at videotapes and ensuring that they would not work together until he could investigate further. Denn also testified that H.R. had previously instructed him to collect information prior to reporting harassment complaints, and that Todd wanted him to investigate prior to elevating the complaint. Neither party, however, disputes that Denn failed to tell Ceniceros or H.R. about the issue until November 7, 2012.

At this time, CSL had the following policies governing harassment complaints. CSL requires, "If a manager becomes aware harassment, retaliation[,] or discrimination is occurring, either from personal observation or as a result of an employee coming forward, the manager must immediately report it to Human Resources. All complaints are to be handled in a formal manner and must involve Human Resources." (Doc. 42-7 at 4). CSL Plasma also maintains a separate Harassment and Complaint Resolution Policy that, in relevant part, states:

> All CSL Plasma employees and/or managers/supervisors are required to immediately report (orally and/or in writing) all incidents of harassment to a manager and Human Resources. Managers who are aware of harassment or related inappropriate conduct and who fail to ensure suitable corrective action is taken are subject to corrective action, or termination. Management has the special responsibility to act promptly to eliminate any discrimination or harassment. If a member of management…receives information that [harassment] might be occurring he or she must take immediate action to address the problem. In the first instance they should inform Human Resources Management….Management is required to report all incidents immediately to Human Resources….Prompt action will be taken upon receipt of a complaint unless the complainant expressly requests that no action is to be taken and Human Resources Management determines (based upon legal advice) that federal, state[,] or local law does not mandate action….While…the wishes of the complaining person regarding action

6

by the respondent(s) cannot be guaranteed in every instance, they will be protected to as great a degree as is legally possible.

(Doc. 42-8 at 2, 4, 6). Denn's position description states that he must: "Support[] the adherence to all HR policies and practices through fair and equitable treatment of all employees. Communicate[] effectively with HR to ensure HR compliance." (Doc. 42-9 at 1). Denn was provided with all these policies when he started at CSL and had access to them at all times through CSL's intranet site.

CSL terminated Denn on November 8, 2012. The termination paperwork lists Denn's failure to escalate the Todd-Desouza incident as the primary basis for his termination. (Doc. 42-23 at 2). It also lists several previous corrective actions taken against him. *Id.* Heatherman, Jackson, and Brittain all participated in the termination decision. Heatherman eventually hired a male employee to replace Denn.

Denn testified that his sex also contributed to his termination. To support that theory, Denn presented the following undisputed evidence about events occurring while under Heatherman's control.[5] Heatherman received two sex discrimination complaints: one from Denn and one from a fellow male employee Michael Carter ("Carter"). Carter, who filed a separate MHRA lawsuit against CSL, testified that during his employment he felt that some female supervisors targeted him. Denn testified that Heatherman discriminated against him by holding him to a higher standard. Denn further testified that Heatherman falsely claimed he was not in

---

[5] As a part of this evidence, Denn submitted an affidavit from Todd in which she stated, "I also witnessed multiple occasions where Rebecca Heatherman would single out male employees and target them for termination or treat them less favorably than female employees. Examples of this conduct would include Ken Lain, Thomas Denn, Michael Carter, Terrill Canady, and James Carter." (Doc. 42-1 at 8). CSL later presented a second affidavit from Todd in which she retracted this statement, claiming she had no personal knowledge of such "targeting" of these individuals. (Doc. 42-1 at 4). Todd further testified that Denn's attorney incorrectly phrased the language in the first affidavit, making it much broader than her actual knowledgebase. As such, the Court excluded major portions of the first affidavit because it was not based on Todd's personal knowledge. *See* Fed. R. Civ. P. 56(c)(4); *Ward v. Int'l Paper Co.*, 509 F.3d 457, 462 (8th Cir. 2007). Finally, after reviewing both affidavits, the Court has concerns regarding the circumstances and propriety of the first affidavit.

7

the production area for a sufficient amount of time. Todd averred that although Ceniceros was not as adept at managing the donor floor as Denn, Heatherman seemed to like Ceniceros better than Denn. For example, on one occasion, Heatherman commended Ceniceros for one of Denn's ideas. Following Denn's termination, Todd overhead Brandi Robinson ("Robinson"), a trainee manager, tell Ceniceros, "Isn't nice that all the testosterone is gone so that we don't have to deal with it anymore." (Doc. 42-1). According to Denn, Ceniceros also told him that CSL was not a place for males. Kenneth Lain ("Lain"), who also filed a complaint with H.R. against Heatherman, testified that she treated male armed forces veterans more poorly than female employees. Lain, however, claimed that any unfair treatment he received from Heatherman was unrelated to his sex. Lain also feared that CSL would retaliate against him for his deposition testimony.

After his termination, Denn exhausted all administrative remedies and then filed the instant lawsuit on July 2, 2013. CSL removed. Denn filed a motion for summary judgment on August 21, 2014. CSL then filed suggestions in opposition and its own motion for summary judgment on September 26, 2014. After briefing through sur-reply by each party, the motions are now ripe for review.

## Standard of Review

A moving party is entitled to summary judgment "if [it] shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has satisfied its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must set forth specific facts showing there is a genuine issue for trial, *Anderson*, 477 U.S. at 248, but the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[, but when] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (internal quotation marks omitted).[6]

## Discussion

Although both parties move for summary judgment, the Court first addresses CSL's motion. CSL contends that it is entitled to summary judgment on both counts because Denn cannot produce sufficient evidence to demonstrate that his sex or his complaint about alleged sex discrimination were contributing factors in CSL's decision to discipline and terminate him. The Court addresses each count separately below.

    **I. Because the undisputed material facts do not show that Denn's sex contributed to his termination, CSL is entitled to summary judgment on Count I.**

Count I asserts a MHRA sex discrimination claim. Under the MHRA, an employer cannot discriminate against an employee because of his sex. Mo. Rev. Stat. § 213.055.1(1)(a).

---

[6] Denn's briefing significantly relies upon the Supreme Court of Missouri's pronouncement that "[s]ummary judgment should seldom be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. 2007). In so doing, Denn insinuates that there is a special summary judgment exception for discrimination cases, but the Eighth Circuit has recently rejected such a notion. *See Torgerson*, 643 F.3d at 1043 ("There is no 'discrimination case exception' to the application of summary judgment.").

9

Discrimination is broadly defined as "*any* unfair treatment based on race, color, religion, national origin, ancestry, sex, age as it relates to employment, disability, or familial status as it relates to housing." Mo. Rev. Stat. § 213.010(5) (emphasis added).

Because of this expansive language, the Supreme Court of Missouri has held that the MHRA's "safeguards…are not identical to the federal standards [governing discrimination claims under Title VII] and can offer greater discrimination protection." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818-19 (Mo. 2007). This greater protection has led it to abandon the *McDonnell Douglas* burden-shifting framework[7] in MHRA discrimination and retaliation cases. *See Templemire v. W&M Welding, Inc.*, 433 S.W.3d 371, 383 (Mo. 2014) ("[T]his Court rejected the application of the burden-shifting analysis that *McDonnell Douglas*…employed in federal discrimination cases, commonly referred to as the 'motivating factor' analysis."). Nevertheless, Missouri courts still consult Title VII precedents that are consistent with Missouri law. *See Daugherty*, 231 S.W.3d at 818.

To make a submissible MHRA discrimination case, a plaintiff must show that: (1) he suffered an adverse action; (2) his sex was a contributing factor in the adverse action; and (3) he incurred damages as a result. *See Shirrell v. Saint Francis Med. Ctr.*, 24 F. Supp. 3d 851, 864 (E.D. Mo. 2014) (citing *Daugherty*, 231 S.W.3d at 820 (citing what is now *Mo. Approved Jury Instr.* (Civil) 38.01)).[8] As to the second element, a contributing factor is "one 'that contributed a

---

[7] The *McDonnell Douglas* burden-shifting framework is a three-step test used to determine whether there is sufficient circumstantial evidence for a plaintiff's Title VII claim to survive summary judgment. *See Daugherty*, 231 S.W.3d at 819 n.6. This framework proceeds as follows: (1) the plaintiff must present sufficient evidence to satisfy the prima facie elements of his Title VII claim; (2) if he does so, the burden shifts to the employer to show legitimate, non-discriminatory reasons for the adverse actions; (3) if the employer satisfies this burden, then the final burden rests with the plaintiff to show that those reasons were simply pretext for discrimination. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011).

[8] The parties vigorously dispute whether a plaintiff, in addition to proving the above elements, must also establish that: (1) he was qualified to perform the position, and (2) he was treated differently than similarly-situated employees. *See Ressler v. Clay Cnty.*, 375 S.W.3d 132, 141 (Mo. Ct. App. 2012) (including these two elements as

10

share in anything or has a part in producing the effect.'" *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1002 (8th Cir. 2011) (quoting *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 867 (Mo. Ct. App. 2009)).

Here, Denn presents sufficient evidence on the first and third elements to survive summary judgment, because he was terminated and thereby suffered damages. The parties focus on the second element, whether Denn's sex was a contributing factor. CSL posits that it terminated Denn solely because of his poor performance. In particular, CSL contends he received numerous verbal and written warnings regarding various performance deficiencies, failed to correct these deficiencies, received a final written warning for his continued failures, and then was terminated for the failure to immediately elevate the Todd-Desouza incident. Denn first challenges the credibility of these proffered reasons, arguing they are fabricated and show he was held to a higher standard than others. Denn further contends that other evidence supports an inference of discrimination, namely: (1) that a similarly-situated employee, Ceniceros was not disciplined, (2) Todd's testimony that Heatherman favored Ceniceros over Denn, (3) Carter's and Lain's testimony that Heatherman showed preferential treatment for female employees over male employees, and (4) comments made by female staff members showing an animus towards

---

part of the prima facie case for MHRA discrimination claims). The Supreme Court of Missouri has never addressed this issue, so the Court must predict how it would rule if so confronted. *See Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 897 (8th Cir. 2014) ("Where the Missouri Supreme Court has not spoken, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." (internal quotation marks omitted)). After carefully reviewing the parties' arguments and conducting independent research, the Court concludes that the Supreme Court of Missouri would hold that a plaintiff is not required to prove that he was treated differently than similarly-situated females. *See Templemire*, 433 S.W.3d at 383; *Daugherty*, 231 S.W.3d at 818-19; *see also Holmes v. Kansas City Mo. Bd. of Comm'rs*, 364 S.W.3d 615, 627 (Mo. Ct. App. 2012); *Lomax v. DaimlerChrysler Corp.*, 243 S.W.3d 474, 482-83 (Mo. Ct. App. 2007). This is not to say, however, that evidence along these lines is irrelevant to the contributory factor analysis under Missouri law. To the contrary, such evidence may shed light upon whether a protected characteristic played a part in an employer's decision. It is less clear how the Supreme Court of Missouri would decide the qualifications issue, *see E.E.O.C. v. Con-Way Freight, Inc.*, 622 F.3d 933, 938 (8th Cir. 2010), but the Court need not venture a guess, because assuming this element applies, Denn has presented sufficient evidence to satisfy the minimal showing "that he possesses the basic skills necessary" to perform the job. *See McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 874 n.2 (8th Cir. 2007) (internal quotation marks omitted).

11

male employees. CSL counters that even when taken together, this evidence does not support an inference that Denn's sex contributed to his termination, especially considering that they replaced him with a male employee.

The Courts finds that no rational jury, viewing the record as a whole, could find for Denn. As an initial matter, Denn fails in his efforts to undermine CSL's proffered reasons for termination. A plaintiff may demonstrate sex discrimination by showing that the employer's bases for termination were less than credible, thus supporting an inference that the reasons were simply an artifice to disguise the prohibited consideration. *See Lomax v. DaimlerChrysler Corp.*, 243 S.W.3d 474, 483 (Mo. App. Ct. 2007).[9] However, it is undisputed that Denn received numerous verbal and written reprimands for a variety of perceived deficiencies. Although Denn initially received positive reviews, this changed in late 2011 when he was twice disciplined by Kennedy, a male supervisor. This was followed by another written warning from Heatherman in February 2012, which outlined numerous different infractions committed by Denn, including some previously noted by Kennedy. Although Denn attempts to controvert some of this discipline by explaining that Heatherman included false information such as lower than actual production numbers, he was never disciplined for such an alleged deficiency[10] and this testimony does not counter the litany of other documented deficiencies. And while he contends that Heatherman "set him up to fail" by requiring him to perform more tasks than an average

---

[9] Such a line of proof is not to be confused with showing pretext, the requirement under the third step of the *McDonnell Douglas* framework. *See Lomax*, 243 S.W.3d at 482. Rather, if a plaintiff decides to use this type of evidence, which Denn has done, then he must simply present evidence that the stated reasons are less than credible. *See id* at 483; *see also McCullough v. Commerce Bank*, 349 S.W.3d 389, 398-99 (Mo. Ct. App. 2011) (affirming a trial court's rejection of a pretext instruction because the instruction would amount to a reversion to the *McDonnell Douglas* burden-shifting framework).

[10] Throughout his deposition and briefs, Denn mischaracterizes his write-up as disciplining him for not performing enough procedures, but the unchallenged disciplinary record shows that CSL reprimanded him for not consistently "driving or managing flow or building relationships." (Doc. 42-12 at 2-4).

12

employee could accomplish, he does not point to evidence, aside from sheer speculation, that she did not impose similar development plans on similarly-situated employees.

After the initial written discipline, Heatherman and Denn repeatedly met regarding his development plan goals. At one point, Heatherman acknowledged that Denn showed significant improvement. But from March 5, 2012 through August 2012, Heatherman consistently voiced displeasure with Denn missing deadlines, interacting poorly with others, failing to elevate concerns, and not administering corrective actions. Eventually, Heatherman requested permission to serve Denn with a final written warning. After review and approval by H.R., which included Brittain, a male employee, Heatherman served the final written warning on Denn. This document told Denn, in pertinent part, to improve his communications with Heatherman, H.R., and his peers. This command was reiterated in a later-served addendum, which also cited Denn for another instance of failing to apprise H.R. about an issue.

Approximately one week after this addendum, Denn learned of the Todd-Desouza incident but did not report it to his peer manager or H.R. until a week later, even though the policies stated he must report such incidents immediately and he was recently disciplined for failing to do so. Denn protests that Todd requested he postpone reporting and that H.R. would have admonished him for reporting without investigating. But despite Denn's efforts to challenge the credibility of CSL's reasons for disciplining him and thus create a genuine issue for trial, *see Lomax*, 243 S.W.3d at 483, he falls short because he has no *proof* underlying his challenges. *Cf. Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("*Proof* that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."

13

(emphasis added)). Thus, looking at the undisputed facts regarding his discipline, no rational jury could conclude that his numerous write-ups were merely a guise for sex discrimination.

Nor could a rational jury find that the remainder of Denn's proffered evidence demonstrates sex discrimination. Denn first claims that Heatherman never punished his fellow assistant manager Ceniceros, thus showing animus toward him as a male.[11] But he has not presented evidence that Ceniceros committed the same infractions as him. *Cf. Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 720 (8th Cir. 2008) (noting that to be similarly situated the "individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engage in the same conduct without any mitigating or distinguishing characteristics"). For instance, he does not show that she, like him, repeatedly had problems with interacting with employees, missing deadlines, and failing to elevate complaints to management or H.R. Instead, Denn, relying on his and Ceniceros' testimony, contends that she had lower "production" numbers than him and never completed maintenance work. But Denn never proves that he was disciplined for either of these two failures.[12] Thus, Denn has not shown that Ceniceros was similarly situated yet treated differently.

Denn next cites testimony from Todd, Lain, and Carter as evidence that a trial-worthy issue remains. The Todd and Lain testimony, however, is derivative of the Ceniceros evidence and suffers from the same fatal flaw: It fails to show that Denn was similarly situated to any female employee yet treated differently from her. Carter's testimony only generally shows that he *felt* he was the victim of sex discrimination because he was "targeted by female supervisors,"

---

[11] Although Missouri courts do not *require* a plaintiff to plead and prove similarly-situated evidence as a prima facie case element, a plaintiff *may* employ this type of evidence to create an inference of discrimination. *See Holmes*, 364 S.W.3d at 627. Denn clearly chose to do so here, because his petition and summary judgment briefs rely on the lack of punishment doled out to Ceniceros as central proof of discrimination.

[12] Denn also attempts to compare himself to Heatherman under this analysis, but this effort fails because she is his supervisor and there is no *evidence* showing that she engaged in similar conduct.

14

but it does not specify as to what that targeting consisted of, who perpetrated it, whether he was treated differently than similarly-situated female employees, or whether the "discrimination" was not just limited to him. *See also Carter v. CSL Plasma Inc.*, No. 13-CV-00814-FJG, 2014 WL 5438374, at *8, 10 (W.D. Mo. Oct. 24, 2014) (finding that Carter's testimony in his companion lawsuit to Denn's case was based upon nothing more than speculation).

Denn next contends that two comments from Ceniceros and Robinson are "direct evidence" of sex discrimination. As mentioned above, Ceniceros once told Denn that CSL was no place for men, and after Denn's termination, Robinson remarked to Ceniceros, "Isn't it nice that all the testosterone is gone so that we don't have to deal with it anymore." When viewed in the light most favorable to Denn, these comments show that two of his peers may have harbored a gender-motivated bias against him. However, these comments are not direct evidence of discrimination because neither Ceniceros nor Robinson participated in the decision to terminate him. *See Daugherty*, 231 S.W.3d at 818 n.4. Nor are these stray comments circumstantial evidence that his sex contributed to his termination because there is no indication that the comments either influenced decision-makers or were emblematic of similar sentiments held by those decision-makers. *Cf. Fast v. S. Union. Co., Inc.*, 149 F.3d 885, 891-92 (8th Cir. 1998) (noting that numerous stray remarks from a non-decision-maker, coupled with stray remarks from the decision-maker and other evidence, was sufficient to survive summary judgment in an age discrimination case). Quite to the contrary, Denn cites no evidence connecting Heatherman or any H.R. employees to any such comments or beliefs.

Denn lastly asserts that when taken together, these discrete pieces of evidence *cumulatively* create an inference that his sex contributed to his termination. The Court disagrees because simply combining all the evidence that is singly insufficient or irrelevant does not create

15

a genuine issue for trial. *See Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 614 (8th Cir. 2014) (rejecting an employee's attempt to avoid summary judgment by combining all the evidence that the court found individually unavailing). And in any event, even if the Court combines this evidence, it must also be viewed in conjunction with the other undisputed material facts. *See Torgerson*, 643 F.3d at 1042; *cf. Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (holding that the court may not simply adopt the non-movant's view of the evidence when it is plainly contradicted by the record). As noted above, the undisputed facts show that a male employee first disciplined Denn, Denn then incurred numerous infractions over a six-month period, Denn failed to complete all tasks required of him, a team of female and male employees decided to put him on final written warning, this same team eventually decided to terminate him *after* investigating his claims of sex discrimination, and they eventually replaced him with a male employee.

In sum, even when all the undisputed facts are viewed in the light most favorable to Denn with all reasonable inferences taken in his favor, no rational trier of fact could find for him. *See also Carter*, 2014 WL 5438374, at *10 (finding no sex discrimination in a case involving similar arguments and evidence against CSL). Therefore, the Court finds that CSL is entitled to summary judgment on Denn's sex discrimination claim.

### II. Because the undisputed facts show that Denn's discrimination complaint was not a contributing factor in the adverse actions taken against him, CSL is entitled to summary judgment on Count II.

Count II alleges a MHRA retaliation claim. The MHRA prohibits an employer from retaliating or discriminating against an employee for filing a discrimination complaint. *See* Mo. Rev. Stat. § 213.070. To make a submissible retaliation case, Denn must establish that: "(1) he complained of discrimination; (2) the employer took adverse action against him; and (3) a causal

connection relationship existed between the complaint and the adverse action." *McCrainey v. Kansas City Mo. Sch. Dist.*, 337 S.W.3d 746, 753 (Mo. Ct. App. 2011). An adverse action includes not only termination, *Wierman*, 638 F.3d at 999, but also any written warnings that the termination was predicated upon. *Spears v. Mo. Dep't of Corrs. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000). The causation element analysis mirrors the one used for MHRA discrimination cases, that is, the plaintiff must show that complaint was a contributing factor in the employer's decision to take the adverse action. *See Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664-65 (Mo. 2009).

It is undisputed that Denn has presented sufficient evidence on the first two elements: (1) he complained to H.R. about Heatherman subjecting him to sex discrimination; and (2) he received a final written warning in August 2012 and then was terminated in November 2012. CSL, however, contends that Denn cannot satisfy the causation element because the only probative evidence he presented is the coincidental timing of the final written warning. Denn disagrees, contending that this suspicious timing, when coupled with other evidence, is sufficient to survive summary judgment.

The Court finds that Denn has not adduced sufficient evidence to survive summary judgment. It is undisputed that Denn received his final written warning from Heatherman only a couple of days after he complained to H.R. about her. It is unclear whether Heatherman knew about the complaint when she served the final written warning, but even assuming she did, such close temporal proximity alone is generally insufficient to create a genuine issue on retaliation; something more is required. *Williams*, 281 S.W.3d at 868-69; *see Medley v. Valentine Commc'ns, Inc.*, 173 S.W.3d 315, 325 (Mo. Ct. App. 2005) (holding that close temporal

proximity between adverse act and complaint of discrimination was alone insufficient to make a prima facie case of MHRA retaliation).

Denn fails to show something more. He highlights what he characterizes as his sterling work record before Heatherman's promotion and her withholding the harshest punishment until after his complaint. This falls short of showing retaliation for two reasons. First, Denn received discipline before Heatherman's promotion, so his work record was not as unblemished as he claims. Second, even though the final written warning was served *after* his complaint, no one disputes that Heatherman sought approval for it a month *before* his complaint and it was predicated on cumulative infractions dating as far back as February.[13] Similarly, even his termination, which occurred two months after his complaint, was predicated not only upon the Todd-Desouza incident but also the numerous previous written warnings he received for pre-complaint performance deficiencies. Since the majority of his discipline and the grounds for his later termination all occurred before his complaint, this evidence does not assist Denn. *Cf. Williams*, 281 S.W.3d at 867-68 (finding a submissible retaliation case where the plaintiff, among other things, showed that she had a good work history before her sexual harassment complaint and most of her discipline arose thereafter).

As additional evidence of retaliatory intent, Denn cites Lain's testimony that Lain "feared retaliation" for participating in a deposition for this case. This testimony, however, does not raise an inference that *Denn* was retaliated against, because even assuming that Lain's "fear" was based upon a prior adverse experience, there is no evidence that Lain was similarly situated to Denn. *Cf. id.* at 869 (noting that in addition to suspicious timing, the plaintiff also showed,

---

[13] Denn argues that the Heatherman received approval in late July 2012 and held onto the final written warning so she could retaliate against him in the future. Denn provides absolutely no support for this theory, and the Court cannot take such an unreasonable inferential leap. *See Johnson*, 769 F.3d at 611 ("[W]e give the nonmoving party the benefit of all *reasonable* inferences which may be drawn *without resorting to speculation*." (emphasis added)).

among other things, that a similarly-situated employee was also terminated after filing a sexual harassment complaint).

In sum, no rational jury, viewing the record as a whole, could conclude that Denn's discrimination complaint contributed to his final written warning or termination. Therefore, CSL is entitled to summary judgment on Count II.

Because the Court grants summary judgment to CSL on both claims, it must necessarily deny summary judgment to Denn. Therefore, his motion for summary judgment is DENIED AS MOOT.

## Conclusion

Because there is no dispute of material fact and judgment as a matter of law is proper on both counts, the Court GRANTS CSL's motion for summary judgment (Doc. 41) and DENIES Denn's motion for summary judgment (Doc. 36).

**IT IS SO ORDERED.**

Date: March 2, 2015              /s/ Greg Kays
                                 GREG KAYS, CHIEF JUDGE
                                 UNITED STATES DISTRICT COURT